IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FIRST HAWAIIAN BANK,      )    CIVIL NO 08-00177 DAE-LEK
                           )
        Plaintiff,     )
                           )
   vs.             )
                           )
DAVID BARTEL,         )
                           )
        Defendant.     )
_____ )

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND FINDINGS AND
RECOMMENDATION TO DENY DEFENDANT'S MOTION TO TRANSFER VENUE**

       Before the Court is Defendant David Bartel's ("Bartel")
Motion to Transfer ("Motion"), filed on June 6, 2008, and
Plaintiff First Hawaiian Bank's ("FHB") Motion to Strike Portions
of Reply Memorandum of Points and Authorities in Support of
Motion to Transfer; Reply Declaration of Andrew A. August in
Support of Motion to Transfer; Reply Declaration of Donald F.
Drummond in Support of Motion to Transfer; and Request for
Judicial Notice in Support of Motion to Transfer ("Motion to
Strike"), filed on July 9, 2008.  FHB filed its memorandum in
opposition to the Motion on June 27, 2008, and Bartel filed his
reply in support of the Motion on July 3, 2008.  Bartel did not
file a response to the Motion to Strike.  These matters came on
for hearing on July 15, 2008.  Appearing on behalf of Bartel were
Donald Drummond, Esq., and Judy Tanaka, Esq., and appearing on
behalf of FHB were Howard Steinberg, Esq., and Kelly LaPorte,

Esq.  After careful consideration of the motions, supporting and
opposing memoranda, and the arguments of counsel, this Court
HEREBY DENIES FHB's Motion to Strike and HEREBY FINDS AND
RECOMMENDS that the district judge DENY Bartel's Motion for the
reasons set forth below.

## BACKGROUND

FHB instituted the instant diversity action alleging
that Bartel,[1] a citizen of the State of California, breached a
guaranty on a written contract.  The amount in controversy
exceeds $75,000, exclusive of interests and costs.  FHB is a
Hawaii corporation with its principle place of business in the
State of Hawaii.  [Complaint for Breach of Guaranty, filed
April 21, 2008 ("Complaint"), at ¶¶ 1, 3.]

In 1992, Bartel and Leonard Nash opened a Chevrolet
dealership in Tracy, California ("the Dealership").  Bartel was
never involved in the day to day operations because he was
managing another dealership in Marin County, California.
Stephen Kraut, the general manager of the Dealership, was in
charge of all operations.

---

[1] Bartel is a retired businessman who has been engaged in
the automobile dealership business for over thirty years.  [Decl.
of David Bartel in Supp. of Motion ("Bartel Decl.") at ¶¶ 2-3.]

In 2004, the Dealership had a flooring line[2] with Comerica Bank ("Comerica").  On February 18, 2005, Citibank became the Dealership's lender, and the Dealership signed an agreement for a $10 million flooring line.  Bartel executed a form of guaranty, which provided that any disputes would be resolved in California.  On June 23, 2005, Citibank and FHB notified the Dealership in writing that the Dealership's flooring credit line had been sold, transferred, and assigned to FHB.

On October 30, 2006, FHB transmitted a commitment letter to Bartel and Kraut, informing them that FHB approved the renewal of the Dealerships flooring line.[3]  [Exh. D to Bartel Decl.]  The commitment letter referred to four documents to be executed therewith: a Floor Agreement (Variable Rate); a Security Agreement (Dealer Inventory); and two copies of a Commercial Continuing Guaranty for Bartel and Kraut.  Bartel signed the Commercial Continuing Guaranty ("the Guaranty") and agreed to guaranty the debt the Dealership owed FHB up to a specified

---

[2] A "flooring line" is a form of revolving credit secured by the vehicles that a car dealership purchases with the loan proceeds.  As the dealership sells vehicles, it must pay the floored amounts to the lender within a specified period of time. If the dealership does not pay the floored amounts to the lender, the industry commonly refers to the vehicles as being sold "out of trust."  [Bartel Decl. at ¶ 7.]

[3] Javier Castro, a FHB Vice President, signed the commitment letter which indicated that FHB had increased the Dealership's available credit to more than $12 million.  [Bartel Decl. at ¶ 12.]

amount.  [Bartel Decl., Exh. H.]  Bartel states that, although he signed the Guaranty, he had no reason to suspect that FHB had amended any of the venue or choice of law provisions in the Dealership's prior agreements.  [Bartel Decl. at ¶ 13.]

In December of 2007, FHB's Pasadena-based commercial loan center claimed that it discovered $8.6 million worth of inventory missing or sold out of trust.  According to Bartel, he first became aware of vehicles being sold out of trust on November 13, 2007, when Kraut admitted in an e-mail that he had caused $2.4 million of the Dealership's inventory to be sold out of trust since 2005.  In a meeting with FHB representatives on November 28, 2007, Kraut confirmed that he had defrauded FHB.  Bartel also contends that, at the time of the Agreement and unbeknownst to him, FHB was in possession of several months of audit reports showing an increase of potential out of trust vehicles totaling more than $2 million.  [Id. at ¶ 14.]

When the Dealership defaulted on its obligations under the Agreement, Bartel allegedly breached his own obligations under the Guaranty by failing to pay FHB the Dealership's outstanding indebtedness.  According to FHB, to date, Bartel owes FHB all sums due pursuant to the Guaranty, costs and expenses incurred by FHB in connection with the administration and collection of such indebtedness, and interest.

4

In the instant Motion, Bartel argues that venue is improper in Hawaii because this case has no nexus with Hawaii, and all of the evidence, witnesses, and underlying facts in this case relate to California.  In the interest of judicial economy and justice, Bartel argues that the case should be transferred to the Southern District of California.[4]

Bartel argues that, although the parties' forum selection clause is to be given some deference, it is not dispositive.  A defendant's strong showing of inconvenience will justify deviation from the specified forum.  Despite the location of FHB's headquarters in Honolulu, the Dealership obtained its loan and flooring line from FHB's regional offices in Pasadena, California.  According to the Motion, all relevant payments were made from California accounts to FHB's account in California. Bartel believes that, if conducted in Honolulu, the trial will be unduly expensive, time consuming, and burdensome.

Bartel claims that FHB changed the forum selection clause in the Guaranty without bringing it to his attention.  FHB allegedly changed the forum to Hawaii to escape the consequences

---

[4] In his Motion, Bartel argued that the case should be transferred to the Northern District of California.  At the hearing on the Motion, FHB's counsel pointed out that the Dealership is not located within the Northern District of California.  Bartel's counsel represented that Bartel would agree to transfer the case to the Southern District of California where the Dealership is located.

of a recent California Supreme Court decision holding that pre-litigation jury trial waivers in civil cases are unconstitutional under California law.  Thus, Bartel argues that FHB denied his right to a unanimous decision in a trial by jury under the constitution of the state in which he resides.

In its memorandum in opposition to the Motion, FHB argues that the forum selection clause in the Guaranty is not only valid and enforceable, but also conclusively establishes that Hawaii is the proper forum for the convenience of the parties.  FHB emphasizes the strong presumption honoring the plaintiff's choice of forum.  With regard to Bartel's claim that he was unaware of the forum selection clause, FHB argues that, if Bartel failed to read the Guaranty, he did so at his own peril.

Despite Bartel's contention that FHB had audit reports showing an increase in potential out of trust vehicles, FHB argues that Bartel failed to set forth any facts establishing wrongdoing on FHB's part.  Bartel does not state that FHB knew vehicles were being sold out of trust, nor does he explain why FHB would increase the Dealership's flooring line by over $2 million if it knew it was being defrauded.  Moreover, FHB argues that the false documentation from the Dealership was to blame.

Although Bartel also claims that FHB presented him with the Guaranty under "take it or leave it" circumstances, he admitted that no one from FHB spoke with him about the Guaranty.

6

Further, because Bartel represented that he did not learn about
Kraut's fraud until a year after he signed the Guaranty, there
was no reason for Bartel to feel that he could not find a
different lender to provide financing for the Dealership if he
was unwilling to disagree to FHB's terms.

FHB argues that Bartel has not demonstrated that the
transfer of venue serves the convenience of the witnesses.
Bartel failed to identify the nature of any of the non-party
witnesses' testimony, nor did he explain why such testimony is
relevant to the case.  Bartel's counsel named only two non-FHB
employees who he wants to depose and there is no evidence that
the two named witnesses will be unwilling to testify at trial in
Hawaii.

Finally, FHB argues that, although Bartel asserts that
litigating in Hawaii would be unduly burdensome for both parties,
Bartel ignores the fact that FHB is headquartered in Hawaii, is a
resident of Hawaii, and has chosen to litigate in its home forum.
FHB plans to call three witnesses who reside in Hawaii, and the
relevant records regarding Bartel's performance are located in
Hawaii.  According to FHB, the records of Dealership's loan
payments and the processing thereof are only accessible in
Hawaii.  Thus, transferring venue to the Southern District of
California may make litigation more burdensome for FHB.  FHB
contends that Bartel's arguments do not overcome the strong

presumption in honoring a plaintiff's choice of forum and the
parties' forum selection clause.

In his reply, Bartel reiterates that Hawaii is an
improper venue and that this case should be transferred to the
Southern District of California.  Bartel argues that FHB's Hawaii
witnesses have insubstantial testimony and that the State of
California has a greater interest in deciding this controversy
because it arises out of fraud committed in California, to the
detriment of its citizens.  Bartel also points out that FHB spent
a majority of their opposition brief erroneously applying the
forum non conveniens dismissal-related standard.

Bartel asserts that many questions of fact need to be
addressed in order for him to present his defense, such as how
FHB managed to allow so much of the vehicle inventory securing
the Dealership's debt to go unaccounted for, when FHB allegedly
counted the vehicles every month from June 2005 to November 2007.
He argues that the only way for him to address these issues is to
transfer venue from Hawaii to the Southern District of
California.

Although Bartel does not know the identity of all of
the key witnesses in this case, he contends that virtually all of
the FHB employees who dealt with Kraut and the Dealership reside

in California.[5]  In addition, Bartel may need witnesses from the Dealership's prior lenders: Comerica and Citibank, both located in California.  Bartel has also retained forensic accountants from San Francisco who will provide expert testimony to help the court understand the out of trust status and how things could have continued for so long.  Bartel argues that, although they are willing to travel, these experts will charge for travel time, air fare, and deposition and trial testimony in Hawaii.

Bartel also asserts that two key potential defendants to this case, the Dealership's bookkeeper, Renee Cary, and Kraut, both reside in California and are out of reach of the personal jurisdiction of the District Court of Hawaii.  Thus, Bartel argues that he will not be able to assert his claims against them if this case remains in Hawaii.

## **MOTION TO STRIKE**

In its Motion to Strike, FHB argues that the Court should strike Bartel's reply, and its associated declarations and supporting documents (collectively "Reply Documents"), because they present new evidence and arguments that Bartel did not raise in the Motion.  FHB also argues that there is no indication that the new "facts" alleged in defense counsel Donald F. Drummond's declaration in support of the reply are based upon personal

---

[5] Other potential witnesses include individuals involved in FHB's inventory methodology, record keeping, accountants, and those who physically conducted the monthly inventory audits.

knowledge.

FHB's arguments are well taken.  The Court, however, finds that the Reply Documents, taken as a whole, generally meet the requirements for a reply.  Further, to the extent that the Reply Documents arguably contain hearsay or factual assertions about which defense counsel does not have personal knowledge, the Court has not viewed the statements therein for the truth of the matters asserted.  The Court viewed defense counsel's statements as an expression of their view of the case and what they believe the discovery and testimony in this case will be.  The Court therefore declines to strike Bartel's Reply Documents.[6]

## VENUE DISCUSSION

Section 1391 of Title 28 of the United States Code provides, in pertinent part:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides,

---

[6] The Court also notes that FHB filed the following documents: Evidentiary Objections to Declaration of Donald F. Drummond in Support of Motion to Transfer, filed on June 27, 2008; Evidentiary Objections to Reply Declaration of Andrew A. August and Reply Declaration of Donald F. Drummond in Support of Motion to Transfer, filed on July 9, 2008; and Evidentiary Objections to Declaration of Donald F. Drummond in Support of Motion to Transfer, filed on July 24, 2008.  These documents raised hearsay, lack of personal knowledge, and relevance objections to various statements in Bartel's supporting declarations.  To the extent that the filings contain impermissible hearsay, the Court has not relied upon these statements and overrules all other objections for the reasons discussed *supra*.

> if all defendants reside in the same State, (2) a
> judicial district in which a substantial part of
> the events or omissions giving rise to the claim
> occurred, or a substantial part of property that
> is the subject of the action is situated, or (3) a
> judicial district in which any defendant is
> subject to personal jurisdiction at the time the
> action is commenced, if there is no district in
> which the action may otherwise be brought.

If venue in the District of Hawaii is improper, the Court must

determine whether, pursuant to 28 U.S.C. § 1406(a), the case

should be dismissed or, if it is in the interest of justice,

transferred to a district where FHB could have brought the

action.  If venue in the District of Hawaii is proper, the Court

must determine whether transfer is warranted under 28 U.S.C. §

1404(a).

I.   **Venue in Hawaii**

The Guaranty provides that its performance is deemed to

occur in Hawaii, and the same provision also contains a choice of

venue clause specifying Hawaii.  [Bartel Decl., Exh. H at ¶ 14.]

In addition, the other loan documents contain similar terms.

[Bartel Decl., Exh. E (Security Agreement) at ¶ 8(I), Exh. F

(Flooring Agreement) at 2, Exh. H (Kraut Guaranty) at ¶ 14.]  The

Court notes that Bartel has argued that he was not aware that FHB

had changed the forum selection clause from those in his prior

guaranties, which specified California, and that the

circumstances surrounding the Dealership's loan documents were

such that the courts should not enforce the forum selection

11

clause.  First, the law presumes that Bartel's signature on the
Guaranty indicates that he read the contract.  <u>See</u>, <u>e.g.</u>, <u>Courbat
v. Dahana Ranch, Inc.</u>, 111 Haw. 254, 264, 141 P.3d 427, 437 (Haw.
2006) ("The general rule of contract law is that one who assents
to a contract is bound by it and cannot complain that he has not
read it or did not know what it contained." (citations and
quotation marks omitted)).  Further, to the extent that Bartel
alleges that there was fraud, overreaching, or other reasons to
invalidate the forum selection clause, these issues are more
fully addressed in Bartel's motion to dismiss based on improper
venue, which is currently pending before the district judge.

        The Court finds that, because the contract which Bartel
allegedly breached - the Guaranty - was performed in Hawaii, a
substantial part of the events or omissions that give rise to
FHB's claims occurred in Hawaii.  The Court therefore finds that,
for the purposes of the instant Motion, venue is proper in
Hawaii.  The Court emphasizes that, in making this finding, it
expresses no opinion on the merits of the arguments before the
district judge in Bartel's motion to dismiss.

## II.  **Section 1404(a) Transfer**

        The Court now turns to the issue whether transfer is
warranted pursuant to § 1404(a), which provides: "For the
convenience of parties and witnesses, in the interest of justice,
a district court may transfer any civil action to any other

district or division where it might have been brought."  The

purpose of § 1404(a) is "to prevent the waste of time, energy and

money and to protect litigants, witnesses and the public against

unnecessary inconvenience and expense[.]"  <u>Van Dusen v. Barrack</u>,

376 U.S. 612, 616 (1964) (citation and quotation marks omitted).

Section 1404(a) vests "discretion in the district court to

adjudicate motions for transfer according to an individualized,

case-by-case consideration of convenience and fairness."  <u>Stewart

Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (citation and

internal quotation marks omitted).

    The Ninth Circuit has stated that courts must weigh

multiple factors in considering a motion for change of venue.

<u>See</u> <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir.

2000).  These factors include:

> (1) the location where the relevant agreements
> were negotiated and executed, (2) the state that
> is most familiar with the governing law, (3) the
> plaintiff's choice of forum, (4) the respective
> parties' contacts with the forum, (5) the contacts
> relating to the plaintiff's cause of action in the
> chosen forum, (6) the differences in the costs of
> litigation in the two forums, (7) the availability
> of compulsory process to compel attendance of
> unwilling non-party witnesses, and (8) the ease of
> access to sources of proof.

<u>Id.</u> at 498-99.  In addition, although not dispositive, the

parties' forum selection clause is a significant factor in the §

1404(a) analysis.  <u>See</u> <u>id.</u> at 499 & n.20 (citing <u>Stewart</u>, 487

U.S. at 29, 31).

In considering whether to transfer this case under §
1404(a), this Court must first determine whether Plaintiffs could
have brought the action in the Southern District of California
and then whether "the transfer will enhance the convenience of
the parties and witnesses, and is in the interests of justice."
Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232,
1243 (D. Haw. 2003) (citation and quotation marks omitted).

The Dealership, the primary obligor of the loan that
Bartel guaranteed, and the Dealership's inventory, the security
for the loan, are located within the Southern District of
California.  The Court therefore finds that a substantial part of
property that is the subject of the action is located in the
Southern District of California and therefore FHB could have
brought the instant action in the Southern District of
California.

The point of contention in this case is the second
inquiry, which requires consideration of three factors: 1)
convenience of the parties; 2) convenience of the witnesses; and
3) the interests of justice.  See id.  If, upon balance of these
factors, a court finds that the other forum is *clearly more
convenient*, it will transfer the action.  See id.

I.   **Convenience of the Parties**

Bartel argues that litigating in California will be
more convenient for the parties.  Bartel's agreement to the

14

designation of Hawaii as the contractual forum, however, waived
his right to seek a change of venue based on his inconvenience.
See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286,
1293 (7th Cir. 1989) ("a valid forum-selection clause may waive a
party's right to assert his own inconvenience as a reason to
transfer a case, but district courts still must consider whether
the 'interest[s] of justice' or the 'convenience of . . .
witnesses' require transferring a case" (citations omitted)
(alterations in original)); see also Calix-Chacon v. Global Int'l
Marine, Inc., 493 F.3d 507, 515 n.5 (5th Cir. 2007) ("A forum
selection clause is a contractual waiver of the right to seek
transfer or dismissal based on the parties' own inconvenience."
(citation omitted)).  Even if this Court were to consider the
convenience of the parties, the Court finds that the Jones
factors that are relevant to the convenience of the parties weigh
in favor of retaining the case in Hawaii.

### A.   **Plaintiff's Choice of Forum**

It is well-established that a plaintiff's choice of
forum is entitled to substantial weight and a defendant "must
make a strong showing of inconvenience to warrant upsetting the
plaintiff's choice of forum."  Resnick v. Rowe, 283 F. Supp. 2d
1128, 1144 (D. Haw. 2003) (citation and quotation marks omitted).
FHB is a Hawaii corporation that has filed suit in Hawaii, which
is also the forum specified in the parties' forum selection

15

clause.  This factor therefore weighs strongly in FHB's favor.

B.  **Parties' Contacts with the Forum**

Although FHB is a Hawaii corporation, Bartel is a California citizen.  Bartel states that he has no contacts with Hawaii, except for family vacations and a single two-hour meeting with FHB officers to discuss this matter.  [Bartel Decl. at ¶ 2.] Up until November 2007, and including the execution of the Guaranty and the other loan documents, Bartel's only contact at FHB was Javier Castro, an FHB vice-president whose office is in Pasadena, California.  [Id. at ¶ 10.]  Thus, Bartel executed the Guaranty and the loan documents in California.  Castro signed the commitment letter on behalf of FHB.  [Bartel Decl., Exh. D at 6.] The Guaranty, however, provides that its performance is in Hawaii.  [Bartel Decl., Exh. H at ¶ 14.]  This Court therefore finds that factors relating to the parties' contacts with the forum are neutral.

C.  **Access to Proof**

FHB states that the records of Dealership's loan payments and the processing thereof are only accessible in Hawaii.  To the extent that the Dealership is located in California and the loan related to inventory located in California, some of the sources of proof will also be available in California.  This factor is therefore neutral.

16

D.   **Financial Burden on the Parties**

The Court recognizes that, because Bartel is a
California citizen with no ties to Hawaii, litigating this case
in Hawaii would be more burdensome than litigating this case in
California.   Bartel, however, is a sophisticated businessman who
is apparently not without financial means.   Further, Bartel
willingly contracted with a Hawaii corporation and agreed to a
contract with performance, forum selection, and choice of law
clauses specifying Hawaii.   FHB asserts that litigating in
California would be more financially burdensome for it because
much of its relevant records are located in Hawaii.   FHB is a
large corporation that is able to absorb the costs of out-of-
state litigation.   Further, FHB maintains an office in Pasadena
and contracted with the Dealership, a California business.   In
light of these considerations, this Court finds that this factor
is neutral.

Thus, the only relevant factor in the convenience of
the parties analysis is the plaintiff's choice of forum.   Even if
Bartel had not waived the right to assert his inconvenience, this
Court would still find that the convenience of the parties weighs
in favor of retaining the case in Hawaii.

II.   **Convenience of the Witnesses**

"Convenience of the witnesses, other than party
witnesses, is of paramount importance."   Robinson, 304 F. Supp.

17

2d at 1243 (citations omitted).

> The party seeking the transfer must specify
> clearly, typically by affidavit, the key witnesses
> to be called and their location and must make a
> general statement of what their testimony will
> cover. The emphasis, as has been articulated by
> many courts, is properly on this showing rather
> than on which party can present a longer list of
> possible witnesses located in its preferred
> district. The focus on this point is a
> qualitative, not a quantitative one and clearly is
> dependent on the factual and legal context of the
> particular case. Obviously, one important or
> material witness may outweigh a great number of
> less important 15 witnesses.

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,

Federal Practice and Procedure § 3851 (footnotes omitted).

It appears that there will be a number of significant

witnesses who are FHB employees.  These witnesses, however, "do

not figure into the 'third-party inconvenience' calculus" because

FHB can obtain their presence for trial in Hawaii.  See DEV

Indus., Inc. v. NPC, Inc., 763 F. Supp. 313, 315 (N.D. Ill. 1991)

(citation omitted).  Bartel's potential witnesses who are located

in California include: representatives of Comerica and Citibank,

the defense's forensic accountants, Renee Carey - the

Dealership's bookkeeper, and Kraut.  Bartel submitted a

declaration of counsel with general statements of what the

defense believes it will discover from these witnesses.  [Reply

Decl. of Donald F. Drummond in Supp. of Motion at ¶¶ 4-7.]

A.   **Availability of Compulsory Process to**
     **Compel Attendance of Unwilling Non-party Witnesses**

The non-party witnesses who are located in California
could be compelled to appear if this case were transferred to the
Southern District of California, but could not be if the case
remains in Hawaii.  See Fed. R. Civ. P. 45.  There is no
indication, however, that these witnesses will be unwilling to
appear at trial in Hawaii.  In fact, the defense expressly states
that its forensic accountants will be available to travel to
Hawaii, albeit at additional expense.  [Id. at ¶ 7.]  The Court
therefore finds that the convenience of witnesses weighs slightly
in favor of transfer.

III. **Interests of Justice**

"Fairness considerations may be decisive in ruling on a
transfer motion, even when convenience of witnesses and parties
points the other way."  Pratt v. Rowland, 769 F. Supp. 1128, 1133
(N.D. Cal. 1991) (citing 15 C. Wright, A. Miller & E. Cooper,
Federal Practice and Procedure § 3851, at 439-40 (2d ed. 1986)).
In addition, this Court addresses the remaining Jones factor -
the forum that is most familiar with the governing law, which is
relevant to the administration of justice.

A.   **Familiarity with the Governing Law**

The Guaranty provides that it shall be construed in
accordance with Hawaii law.  [Bartel Decl., Exh. H at ¶ 14.]

19

This factor therefore weighs strongly in FHB's favor because "a California court does not have the same level of experience with Hawaii contract law" as this district court.  See Television Events & Mktg., Inc. v. Amcon Distrib. Co., 416 F. Supp. 2d 948, 971 (D. Haw. 2006) (citation omitted).

The Court now turns to the public and private interest factors that courts consider within the interests of justice prong.

> The public factors include:
> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interests in having localized controversies decided at home; [and] (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action . . . [and] the avoidance of unnecessary conflicts of law.
> Private factors include:
> (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of witnesses; (3) possibility of viewing subject premises; [and] (4) all other factors that render trial of the case expeditious and inexpensive.

Lee v. Corr. Corp. of Am., 525 F. Supp. 2d 1238, 1244 (D. Haw. 2007) (citations omitted) (alterations in original).

**B.   Public Factors**

The first factor is neutral because this case is in its early stages and would place an equal burden upon the docket of either court.  The next two factors are also neutral because both

communities have an interest in the litigation.  FHB is
incorporated in Hawaii and has its primary place of business in
Hawaii.  The Hawaii community has an interest in seeing that
local banks are able to collect on delinquent loans because the
costs of defaulted loans can be said to affect FHB customers in
general.  The community in the Southern District of California
has an interest in the litigation because that is where the
Dealership is located.  The fourth factor weighs in favor of
retaining the case because, as noted *supra*, this district court
is more familiar with Hawaii contract law.

     **C.**   **Private Factors**

       The first factor is neutral because there will be
sources of proof which will be more readily available in Hawaii,
and some which will be more readily available in California.  The
second factor weighs slightly in favor of transfer because,
although there is no evidence that non-party California witnesses
will be unwilling to testify in Hawaii, there will be significant
costs of obtaining even willing witnesses' attendance in Hawaii.
The only Hawaii witnesses appear to be FHB employees and FHB can
secure their appearance in either forum.  The third factor weighs
in favor of transfer because the Dealership and its inventory
could be viewed if the case is transferred.  The fourth factor is
neutral because, at this early stage of the case, trial in either
forum would be equally expeditious and there will arguably be

comparable opportunities to minimize litigation expenses.

Having considered the relevant factors, the Court finds that the interests of justice do not clearly favor either retention or transfer.

This Court must recommend transfer if the convenience of the parties, the convenience of the witnesses, and the interests of justice clearly indicate the Southern District of California is clearly the more convenient forum.  <u>See</u> <u>Robinson</u>, 304 F. Supp. 2d at 1243.  The convenience of the parties, or in this case, the operation of the forum selection clause, weighs strongly in favor of retaining the case in Hawaii.  The convenience of the witnesses weighs slightly in favor of transfer and the interests of justice arguably would support either retention or transfer.  The Court therefore FINDS that Bartel has failed to establish that the Southern District of California would clearly be a more convenient forum.


### <u>ORDER</u>

On the basis of the foregoing, FHB's Motion to Strike Portions of Reply Memorandum of Points and Authorities in Support of Motion to Transfer; Reply Declaration of Andrew A. August in Support of Motion to Transfer; Reply Declaration of Donald F. Drummond in Support of Motion to Transfer; and Request for Judicial Notice in Support of Motion to Transfer, filed on July

9, 2008 is HEREBY DENIED.

IT IS SO ORDERED.

### FINDINGS AND RECOMMENDATION

On the basis of the foregoing, this Court HEREBY FINDS, for the purposes of the instant Motion, that venue is proper in Hawaii and that transfer to the United States District Court for the Southern District of California is not warranted.  The Court therefore RECOMMENDS that the district judge DENY Bartel's Motion to Transfer, filed on June 6, 2008.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, August 19, 2008.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**FIRST HAWAIIAN BANK V. DAVID BARTEL; CIVIL NO 08-00177 DAE-LEK;
ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND FINDINGS AND
RECOMMENDATION TO DENY DEFENDANT'S MOTION TO TRANSFER VENUE**

23